1

2

3

4

5

6

7

8                      UNITED STATES  DISTRICT COURT

9                       Northern District of California

10                         San Francisco Division

11   K. OLIVER,                                No. C 12-00943 RS (LB)

12              Plaintiff,                      **ORDER REGARDING DISCOVERY**
           v.                                   **DISPUTES**
13
     MICROSOFT CORPORATION,                     [Re: ECF Nos. 84-87 ]
14
              Defendant.
15   _____/

16                            **INTRODUCTION**

17      In this employment discrimination case, the parties have discovery disputes.  *See* Joint Letter

18   Briefs, ECF Nos. 84 to 87.  The court held a hearing on July 24, 2013.  7/24/2013 Minute Order,

19   ECF No. 90.  After considering the joint letters filed, the arguments of counsel at the hearing, and

20   applicable legal authority, the court denies discovery based on the confidential documents, directs

21   the independent medical exam that will include the parties' negotiated limitations, orders expert

22   depositions, and orders disclosure of the factual investigation that it ordered previously in April

23   2013.

24                             **ANALYSIS**

25   **I. MICROSOFT'S DISCOVERY REQUESTS RE CONFIDENTIAL DOCUMENTS**

26      Ms. Oliver had an employment agreement with Microsoft that required her not to disclose

27   confidential information to anyone outside of Microsoft during her employment.  Joint Letter Brief,

28   ECF No. 84 at 1.  She filed this lawsuit when she was still employed at Microsoft and produced

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    confidential documents back to Microsoft in response to Microsoft's own discovery requests. *Id.*

2    Microsoft now wants her to admit that she provided the documents to her attorney, admit that she

3    was employed by Microsoft when she produced them, admit that the information was confidential,

4    admit that her employment agreement required her to return documents when she left, admit that a

5    failure to return confidential documents is a breach of her employment contract or provide reasons

6    why it was not, and admit that her attorney abetted her breach. *Id.*

7       Fact discovery closed on April 1, 2013. The motion to compel was filed on July 8, 2013, more

8    than seven days after the close of fact discovery, and thus it is untimely. *See* Civil Local Rule 37-3.

9    The court also observes the following. The joint letter says that documents were produced while she

10    was employed, and so the answers to Microsoft's first two requests seem pretty evident in any event:

11    she had to have given them to her attorney when she still was employed by Microsoft. It is hard to

12    see why the exact dates matter so much given that the relevance is attenuated; after all, Microsoft

13    never brought a counterclaim for breach of contract (as it did in *Zody v. Microsoft*, No. C 12 -00942

14    YGR, where the court issues a separate order today ordering some modest discovery given the

15    different procedural posture of the cases). In any event, the untimeliness of the motion to compel

16    means that the court denies it.

17    **II. IME EXAMINATION AND DEPOSITIONS OF EXAMINERS**

18       Ms. Oliver seeks emotional distress damages. Joint Letter Brief, ECF No. 85 at 1. In their April

19    4, 2013 CMC statement, the parties stated that "Defendant has requested, and Plaintiff has indicated

20    that she will agree, to schedule an independent medical examination regarding the damages she

21    alleges in her lawsuit. Plaintiff is awaiting a draft stipulation from Defendant regarding the

22    proposed medical examination." CMC Statement, ECF No. 68. Microsoft designated a psychiatrist

23    to conduct the oral exam and a psychologist to conduct the psychological testing. Joint Letter Brief,

24    ECF No. 85 at 1. Ms. Oliver then sought to impose limits on the scope of the exam regarding the

25    following: (1) limit any inquiry about (a) whether she has a distorted perception of her work or her

26    interactions with Microsoft, (b) her credibility, or (c) the accuracy of her perception of the events in

27    the lawsuit; (2) prevent the psychiatrist from using documents obtained from Microsoft when he

28    conducts the examination or otherwise cross-examine her about any of her prior testimony or prior

1    statements; (3) limit the oral examination so that it does not include family history, sexual history,

2    marital history, legal history, or a history of the incidents leading up to the lawsuit; (4) limit the

3    psychiatrist from disclosing the tape of the exam or any of her verbatim statements unless she

4    agrees; (5) prohibit any communications by the doctors with Microsoft or defense counsel during the

5    exam; and (6) allow her to depose the doctors. *Id.* Apparently the parties negotiated appropriate

6    limitations, but Ms. Oliver withdrew her assent to the IME when Microsoft would not agree to the

7    depositions. *Id.* at 2; *see* Joint Letter Brief, ECF No. 87 (regarding the depositions).

8         Unless the parties stipulate to an IME, an exam may be obtained only by court order upon a

9    showing of "good cause." Fed. R. Civ. P. 35(a). The parties may stipulate to whatever terms and

10   conditions they can agree on. Fed. R. Civ. P. 35(b)(6). The problem is that their statement in their

11   joint status statement was not an agreement but instead was a statement that the parties were

12   working on terms.

13        In the end, even though there is no court order,[1] Microsoft could obtain a court order for an

14   examination limited to what is in controversy in the case. *See* Fed. R. Civ. P. 35(a)(1).[2] It involves

15   Ms. Oliver's claims for discrimination and harassment based on gender and her medical condition of

16   breast cancer (together with claims for failure to prevent, wrongful demotion, wrongful termination,

17   failure to accommodate, and failure to engage in the interactive process), and she asks for emotional

18   distress damages. Third Amended Complaint ("TAC"), ECF No. 53. The complaint's allegations

19

20        [1] Microsoft says that Judge Seeborg directed an IME. Joint Letter Brief, ECF No. 7 at 3.
21   The record shows only the parties' statement to him that they were working out the terms of the
     IME, not any order directing it.
22

23        [2] A plaintiff's mental or physical condition is "in controversy" when the condition is the
     subject of the litigation. *See Haqq v. Stanford Hospital & Clinics*, No. C 06-5444 JW (RS), 2007
24   WL 1593224, *1 (N.D. Cal. June 1, 2007) (citation omitted). Courts will order a mental
     examination when, in addition to emotional distress, cases involve one or more of the following: (a)
25   a claim for intentional or negligent infliction of emotional distress; (b) an allegation of a specific
     mental or psychiatric injury or disorder; (c) a claim of unusually severe emotional distress; (d) a
26   plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (e) plaintiff's
     concession that his or her mental condition is in controversy within the meaning of Rule 35. *See*
27   *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal.1995); *Ragge v. MCA/Universal Studios*, 165
28   F.R.D. 605, 608 (C.D. Cal. 1995).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  discuss the breast cancer, a pattern of pressure, bullying and harassment, and how uncomfortable,

2  stressful, and detrimental it was to her health, including her medical condition, to keep working with

3  her manager during the investigation. *Id.* ¶¶ 9, 59, 61. The complaint references a doctor's note that

4  discussed how a hostile and stressful work environment likely would cause a significant increase to

5  her stress hormone levels, which could weaken her immune system and make her more susceptible

6  to serious illness, including a recurrence of her cancer. *Id.* ¶ 70. Ms. Oliver alleges that as a result

7  of Microsoft's actions, she "has suffered and continues to suffer extreme anguish, humiliation,

8  emotional distress, physical distress and has increased her risk of reoccurrence in breast cancer." *Id.*

9  ¶ 82. Medical records and her deposition testimony address physical injuries resulting from stress,

10  and she asserted that she underwent acupuncture and gasteroenterological treatment for digestive

11  disorders caused by work stress. *See* 1/4/13 Order, ECF No. 63; Joint Letter Brief, ECF No. 60.

12  This is not a garden-variety claim where a plaintiff seeks emotional distress damages only as an

13  adjunct to other claims. *See Haqq*, 2007 WL 1593224 at \*2; *Ayat v. Societe Air France*, No. C 06-

14  1574 JSW (JL), 2007 WL 1120358, \*4 (N.D. Cal. Apr. 16, 2007) (plaintiff sought damages for "loss

15  of past and future earning capacity, fear and terror, emotional distress, discomfort, anxiety, [and]

16  loss of enjoyment of life" that court held "could indicate an unusually severe emotional distress;"

17  this and an ongoing mental illness put plaintiff's mental condition in controversy); *Batts v. County of*

18  *Santa Clara*, No. C08-00286 JW (HRL), 2009 WL 2706397, \*2 (N.D. Cal. Aug. 25, 2009).

19  Thus, Ms. Oliver has put her condition in controversy, and indeed, at the hearing, the parties

20  informed the court that she just disclosed her own examination. As to limitations on the scope of the

21  examination, given that the parties have negotiated them, the parties agreed at the hearing that – if

22  the court ordered the depositions – they could live with their negotiated limitations. As to the

23  depositions, as the court explained at the hearing, the balancing of interests favors Ms. Oliver's

24  deposing the two experts without the depositions counting toward the 10 deposition limit. *See*

25  *House v. Combined Ins. Co. Of America*, 168 F.R.D. 236, 246-47 (N.D. Iowa 1996).

26  There also is an additional mitigation expert that Microsoft disclosed and that was not addressed

27  in the letter brief. Given the procedural posture of the case, the court addressed it anyway at the

28  hearing. For the reasons stated on the record, and given that it is a disclosure that implicates

C 12-00943 RS (LB)
ORDER
4

1    mitigation, the court ordered that Ms. Oliver could take the additional deposition even though she

2    has taken her 10 depositions.  The parties will meet and confer within a week to work out any

3    scheduling and supplemental disclosure issues in the manner discussed on the record.

4    **III.  THE DISCOVERABILITY OF THE MIMS REPORT**

5         The undersigned previously ordered disclosure of the factual information in Microsoft's internal

6    investigation (but not privileged communications).  4/5/13 Order, ECF No. 72 at 1-4 (noting that

7    communications are not privileged merely because lawyers make them).  The balance that the court

8    struck was for fact illumination as a way to avoid deposing the high-level Microsoft employees Ms.

9    Oliver wanted to depose.  *See id.*  Microsoft then gave over the notes of interviews and emails.  Joint

10   Letter Brief, ECF No. 86 at 1.  It withheld what the court thought was an actual typed-up report that

11   the investigator (an in-house attorney named Judy Mims) prepared and argues that it was prepared

12   for and at the direction of Microsoft's in-house counsel to enable her to provide legal advice to HR

13   and management.  *Id.*  As it turns out, at the hearing, Microsoft clarified that there was no report (at

14   least in the sense that was the court's understanding following the previous discovery hearing) and

15   instead, there was certain fact investigation that was disclosed (along with documentation that had

16   been provided to in-house counsel in PDF form on a separate CD).  The remaining information at

17   stake is three emails sent directly to in-house counsel.  *Id.* at 2.

18        The court's prior order directed the disclosure of the fact investigation.  It was not the intent to

19   provide confidential communications but only fact investigation separate from those

20   communications.  The emails themselves to counsel are not fact investigation but privileged

21   communications.  That being said, the court's order was to produce the fact investigation, and

22   Microsoft should be sure that it has done so.

23                                   **CONCLUSION**

24        This disposes of ECF Nos. 84, 85, 86, and 87.

25        **IT IS SO ORDERED.**

26   Dated: July 24, 2013

                                        LAUREL BEELER
27                                      United States Magistrate Judge

28

UNITED STATES DISTRICT COURT
For the Northern District of California

C 12-00943 RS (LB)
ORDER
                                        5