# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| K. OLIVER,<br><br>            Plaintiff,<br>    v.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant.<br>_____/ | No. C 12-00943 RS (LB)<br><br>**ORDER REGARDING DISCOVERY DISPUTES**<br><br>[Re: ECF Nos. 84-87 ] |

## INTRODUCTION

In this employment discrimination case, the parties have discovery disputes. *See* Joint Letter Briefs, ECF Nos. 84 to 87. The court held a hearing on July 24, 2013. 7/24/2013 Minute Order, ECF No. 90. After considering the joint letters filed, the arguments of counsel at the hearing, and applicable legal authority, the court denies discovery based on the confidential documents, directs the independent medical exam that will include the parties' negotiated limitations, orders expert depositions, and orders disclosure of the factual investigation that it ordered previously in April 2013.

## ANALYSIS

### I. MICROSOFT'S DISCOVERY REQUESTS RE CONFIDENTIAL DOCUMENTS

Ms. Oliver had an employment agreement with Microsoft that required her not to disclose confidential information to anyone outside of Microsoft during her employment. Joint Letter Brief, ECF No. 84 at 1. She filed this lawsuit when she was still employed at Microsoft and produced

C 12-00943 RS (LB)
ORDER

confidential documents back to Microsoft in response to Microsoft's own discovery requests. *Id.* Microsoft now wants her to admit that she provided the documents to her attorney, admit that she was employed by Microsoft when she produced them, admit that the information was confidential, admit that her employment agreement required her to return documents when she left, admit that a failure to return confidential documents is a breach of her employment contract or provide reasons why it was not, and admit that her attorney abetted her breach. *Id.*

Fact discovery closed on April 1, 2013. The motion to compel was filed on July 8, 2013, more than seven days after the close of fact discovery, and thus it is untimely. *See* Civil Local Rule 37-3. The court also observes the following. The joint letter says that documents were produced while she was employed, and so the answers to Microsoft's first two requests seem pretty evident in any event: she had to have given them to her attorney when she still was employed by Microsoft. It is hard to see why the exact dates matter so much given that the relevance is attenuated; after all, Microsoft never brought a counterclaim for breach of contract (as it did in *Zody v. Microsoft*, No. C 12 -00942 YGR, where the court issues a separate order today ordering some modest discovery given the different procedural posture of the cases). In any event, the untimeliness of the motion to compel means that the court denies it.

## II. IME EXAMINATION AND DEPOSITIONS OF EXAMINERS

Ms. Oliver seeks emotional distress damages. Joint Letter Brief, ECF No. 85 at 1. In their April 4, 2013 CMC statement, the parties stated that "Defendant has requested, and Plaintiff has indicated that she will agree, to schedule an independent medical examination regarding the damages she alleges in her lawsuit. Plaintiff is awaiting a draft stipulation from Defendant regarding the proposed medical examination." CMC Statement, ECF No. 68. Microsoft designated a psychiatrist to conduct the oral exam and a psychologist to conduct the psychological testing. Joint Letter Brief, ECF No. 85 at 1. Ms. Oliver then sought to impose limits on the scope of the exam regarding the following: (1) limit any inquiry about (a) whether she has a distorted perception of her work or her interactions with Microsoft, (b) her credibility, or (c) the accuracy of her perception of the events in the lawsuit; (2) prevent the psychiatrist from using documents obtained from Microsoft when he conducts the examination or otherwise cross-examine her about any of her prior testimony or prior

statements; (3) limit the oral examination so that it does not include family history, sexual history, marital history, legal history, or a history of the incidents leading up to the lawsuit; (4) limit the psychiatrist from disclosing the tape of the exam or any of her verbatim statements unless she agrees; (5) prohibit any communications by the doctors with Microsoft or defense counsel during the exam; and (6) allow her to depose the doctors. *Id.* Apparently the parties negotiated appropriate limitations, but Ms. Oliver withdrew her assent to the IME when Microsoft would not agree to the depositions. *Id.* at 2; *see* Joint Letter Brief, ECF No. 87 (regarding the depositions).

Unless the parties stipulate to an IME, an exam may be obtained only by court order upon a showing of "good cause." Fed. R. Civ. P. 35(a). The parties may stipulate to whatever terms and conditions they can agree on. Fed. R. Civ. P. 35(b)(6). The problem is that their statement in their joint status statement was not an agreement but instead was a statement that the parties were working on terms.

In the end, even though there is no court order,[1] Microsoft could obtain a court order for an examination limited to what is in controversy in the case. *See* Fed. R. Civ. P. 35(a)(1).[2] It involves Ms. Oliver's claims for discrimination and harassment based on gender and her medical condition of breast cancer (together with claims for failure to prevent, wrongful demotion, wrongful termination, failure to accommodate, and failure to engage in the interactive process), and she asks for emotional distress damages. Third Amended Complaint ("TAC"), ECF No. 53. The complaint's allegations

---

[1] Microsoft says that Judge Seeborg directed an IME. Joint Letter Brief, ECF No. 7 at 3. The record shows only the parties' statement to him that they were working out the terms of the IME, not any order directing it.

[2] A plaintiff's mental or physical condition is "in controversy" when the condition is the subject of the litigation. *See Haqq v. Stanford Hospital & Clinics*, No. C 06-5444 JW (RS), 2007 WL 1593224, *1 (N.D. Cal. June 1, 2007) (citation omitted). Courts will order a mental examination when, in addition to emotional distress, cases involve one or more of the following: (a) a claim for intentional or negligent infliction of emotional distress; (b) an allegation of a specific mental or psychiatric injury or disorder; (c) a claim of unusually severe emotional distress; (d) a plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (e) plaintiff's concession that his or her mental condition is in controversy within the meaning of Rule 35. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal.1995); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995).

discuss the breast cancer, a pattern of pressure, bullying and harassment, and how uncomfortable, stressful, and detrimental it was to her health, including her medical condition, to keep working with her manager during the investigation. *Id.* ¶¶ 9, 59, 61. The complaint references a doctor's note that discussed how a hostile and stressful work environment likely would cause a significant increase to her stress hormone levels, which could weaken her immune system and make her more susceptible to serious illness, including a recurrence of her cancer. *Id.* ¶ 70. Ms. Oliver alleges that as a result of Microsoft's actions, she "has suffered and continues to suffer extreme anguish, humiliation, emotional distress, physical distress and has increased her risk of reoccurrence in breast cancer." *Id.* ¶ 82. Medical records and her deposition testimony address physical injuries resulting from stress, and she asserted that she underwent acupuncture and gasteroenterological treatment for digestive disorders caused by work stress. *See* 1/4/13 Order, ECF No. 63; Joint Letter Brief, ECF No. 60. This is not a garden-variety claim where a plaintiff seeks emotional distress damages only as an adjunct to other claims. *See Haqq*, 2007 WL 1593224 at *2; *Ayat v. Societe Air France*, No. C 06-1574 JSW (JL), 2007 WL 1120358, *4 (N.D. Cal. Apr. 16, 2007) (plaintiff sought damages for "loss of past and future earning capacity, fear and terror, emotional distress, discomfort, anxiety, [and] loss of enjoyment of life" that court held "could indicate an unusually severe emotional distress;" this and an ongoing mental illness put plaintiff's mental condition in controversy); *Batts v. County of Santa Clara*, No. C08-00286 JW (HRL), 2009 WL 2706397, *2 (N.D. Cal. Aug. 25, 2009).

Thus, Ms. Oliver has put her condition in controversy, and indeed, at the hearing, the parties informed the court that she just disclosed her own examination. As to limitations on the scope of the examination, given that the parties have negotiated them, the parties agreed at the hearing that – if the court ordered the depositions – they could live with their negotiated limitations. As to the depositions, as the court explained at the hearing, the balancing of interests favors Ms. Oliver's deposing the two experts without the depositions counting toward the 10 deposition limit. *See House v. Combined Ins. Co. Of America*, 168 F.R.D. 236, 246-47 (N.D. Iowa 1996).

There also is an additional mitigation expert that Microsoft disclosed and that was not addressed in the letter brief. Given the procedural posture of the case, the court addressed it anyway at the hearing. For the reasons stated on the record, and given that it is a disclosure that implicates

C 12-00943 RS (LB)
ORDER
4

mitigation, the court ordered that Ms. Oliver could take the additional deposition even though she has taken her 10 depositions. The parties will meet and confer within a week to work out any scheduling and supplemental disclosure issues in the manner discussed on the record.

### III. THE DISCOVERABILITY OF THE MIMS REPORT

The undersigned previously ordered disclosure of the factual information in Microsoft's internal investigation (but not privileged communications). 4/5/13 Order, ECF No. 72 at 1-4 (noting that communications are not privileged merely because lawyers make them). The balance that the court struck was for fact illumination as a way to avoid deposing the high-level Microsoft employees Ms. Oliver wanted to depose. *See id.* Microsoft then gave over the notes of interviews and emails. Joint Letter Brief, ECF No. 86 at 1. It withheld what the court thought was an actual typed-up report that the investigator (an in-house attorney named Judy Mims) prepared and argues that it was prepared for and at the direction of Microsoft's in-house counsel to enable her to provide legal advice to HR and management. *Id.* As it turns out, at the hearing, Microsoft clarified that there was no report (at least in the sense that was the court's understanding following the previous discovery hearing) and instead, there was certain fact investigation that was disclosed (along with documentation that had been provided to in-house counsel in PDF form on a separate CD). The remaining information at stake is three emails sent directly to in-house counsel. *Id.* at 2.

The court's prior order directed the disclosure of the fact investigation. It was not the intent to provide confidential communications but only fact investigation separate from those communications. The emails themselves to counsel are not fact investigation but privileged communications. That being said, the court's order was to produce the fact investigation, and Microsoft should be sure that it has done so.

### CONCLUSION

This disposes of ECF Nos. 84, 85, 86, and 87.

**IT IS SO ORDERED.**

Dated: July 24, 2013

LAUREL BEELER
United States Magistrate Judge