IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

K. OLIVER,

        Plaintiff,

  v.

MICROSOFT CORPORATION,

        Defendant.
_____/

No. C 12-0943 RS

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff K. Oliver was a well-paid, long time employee of Microsoft who had done well at the company. In the Fall of 2011, Oliver and four other female employees filed an internal discrimination complaint against her supervisor, John Halliwell, and a regional vice president. In the investigation that followed, Halliwell was found to have violated Microsoft's anti-discrimination and retaliation policies in connection with having changed Oliver's job responsibilities and title, and lowered her performance rating. Halliwell was fired, Oliver's performance rating was restored, and she was asked to reassume her full prior duties and job title. Contending she needed, and had been promised, a "fresh start" elsewhere in the company, Oliver declined to resume those duties, and Microsoft ultimately deemed her to have resigned.

Microsoft now seeks summary judgment in this action, which Oliver initiated while the internal investigation was pending. Microsoft contends Oliver suffered no legally-cognizable

1

adverse employment action, that it acted appropriately to investigate and remedy any harm flowing from Halliwell's conduct, and that her claims are not otherwise tenable. Oliver insists Microsoft's findings that its own anti-discrimination policies were violated dooms its motion, and that it cannot show all the harm resulting from Halliwell's actions was ever remedied.

Contrary to Oliver's central argument, it does not follow from the finding of a violation of Microsoft's own policies that legally actionable discrimination, harassment, or retaliation took place. Microsoft has shown that it is entitled to judgment as a matter of law, and its motion will be granted.

## II. BACKGROUND

Oliver began working for Microsoft in 2001, as a "Senior Consultant" based in the Chicago-Central Region office. During her nearly eleven years of continuous employment at Microsoft, she was regularly advanced into a number of different positions and was considered a "HiPo" or "High Potential Employee." Microsoft eventually persuaded Oliver to move to the San Francisco Bay Area to fill the position of "MTC Director" in the West Region, leading to her subsequent recruitment in May 2010 to be the SEL for the Northwest District ("NWD"), reporting to John Halliwell.

Microsoft asserts that after a year as SEL, Oliver felt the job was too big for one person, as a result of a lack of support personnel. Microsoft contends Oliver approached John Cho about possibly splitting the job with him. Oliver insists she remained content in her SEL position, was regularly told she was a strong performer, and did not initiate the break-up of the SEL duties between herself and Cho. Rather, Oliver contends, at some point the position of Program Manager reporting to her was eliminated, thereby shifting those responsibilities onto her plate without additional support. Then in September of 2011, "much to her confusion and frustration," Oliver was "demoted" by Halliwell to be "Chief of Staff." Her SEL title, and the majority of her duties, were transferred to Cho. Oliver contends that, contrary to Microsoft's usual policies, Cho had been promised he would remain on a more lucrative "S" Comp" Plan, which ordinarily would have required that he have employees directly reporting to him. Oliver argues that Halliwell began

disparaging her and suggesting that she was being "managed out for low performance," as a means to ensure that Cho could be compensated under the S Comp plan. Oliver complains that this conduct adversely affected her professional reputation and credibility in the company, for which there has been no remedy or compensation. In the same time frame, Halliwell allegedly recommended Oliver receive a "2" on her annual performance review, a desirable rating, as only a very few of the higher "1" ratings are assigned, but subsequently orchestrated a lower rating of "3" for her, purportedly as part of the effort to favor Cho.

Oliver also contends she was discriminated against based on a medical condition, breast cancer, for which she was diagnosed in May 2008. She received her medical treatments in Chicago at Northwestern Medical Hospital, prior to her transfer to the San Francisco area. Following the first course of treatments, she was to return to Chicago for annual oncology check-ins and testing. Notwithstanding assurances Oliver received that she could return for the check-ins, which were scheduled a year in advance, Halliwell criticized her for having been in Chicago during an annual "quota setting process" in August of 2011. Oliver contends she put her upcoming absence on the Microsoft calendar weeks before quota setting dates were announced, and that the trip did not even conflict with the second week of quota setting, for which she had primary responsibility. She also contends she participated in the quota setting process through conference calls while in Chicago, and that the other director involved in the process never contacted her for support or guidance.

In September of 2011 Oliver and four other females filed an internal Complaint of Gender Discrimination against Halliwell and the Regional VP, Helmut Wilke. In the complaint, Oliver wrote: "Why was I consistently pressured to move out of the Sales Excellence role . . . ?" and "Why am I being pushed to 'go find my next role?'" She questioned the rating she received on her performance review. She also raised the criticism she received for seeing her doctors during the first week of the quota setting process. Collectively, the women alleged that "female managers in the NWD are held to higher standards than male peers" and that Halliwell often disregarded female managers in meetings, while demonstrating "behavior of support and engagement" with males.

In January of 2012, shortly after this suit had been filed, Oliver and her counsel were provided with a written summary of the findings by Microsoft's internal investigator. Those findings included:

> 1. The evidence supports your allegation that John Halliwell lowered your FY11 Performance Review rating for reasons other than legitimate business reasons and in favor of a male employee. Further, the evidence supports that Mr. Halliwell made inappropriate, gender-related comments to you in the workplace. This conduct violates Microsoft's Anti-Discrimination policy.
>
> 2. The evidence supports your allegation that John Halliwell engaged in adverse treatment against you based on your having taken time off to attend to a medical condition by, among other things: (1) citing your absence during the quota setting process as a basis for your review rating; (2) sending you critical communications and making critical comments about you taking time off to address a medical condition; and (3) assigning a substantial portion of your job responsibilities to another employee based in part on his perception of your medical condition. This conduct violates Microsoft's Anti-Discrimination and retaliation policies.

After the investigation, Microsoft fired Halliwell.[1] Oliver's performance evaluation was raised to a "2" and she was given all bonus compensation that flowed from that rating. She was not, however, immediately given back sole responsibility for the SEL position; Microsoft contends it understood she did not want to assume that role and was instead working with her to identify a mutually-agreeable arrangement.

During this time period, Oliver took a two month sabbatical, a benefit she had earned as a result of receiving a Microsoft Achievement Award. In the interim, Microsoft offered, and Cho accepted a position as a "Business Manager." Oliver complains her manager at the time failed to recommend her for that job, or even to tell her about it. When Oliver was then offered the opportunity to resume the full SEL job, she viewed it as a further promotion of Cho and a demotion for her. Oliver applied for 10 other positions at the company, and considers it inexplicable that she got neither an offer for a new position nor a reassignment.

---

[1] Halliwell's termination was based on several facts, including his having asked for and obtained personal loans from Oliver and other Microsoft employees. While Halliwell eventually repaid Oliver, at least one other employee was not paid back.

4

In Microsoft's view, from mid-May until September of 2012, Oliver was paid her full $175,000 salary but did not perform the expected duties of any role. She took at least two vacations, networked, and sought a new position. In June she was told that if she did not take the open SEL role or obtain another position by a certain date, she would be deemed to have resigned. After providing further extensions of that deadline, Microsoft ultimately terminated Oliver's employment on September 4, 2012.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The principles of summary judgment apply equally in discrimination cases. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). Mere assertions that a defendant had a discriminatory motive or intent in taking an adverse action are inadequate to defeat summary judgment unless supported by substantial factual evidence. *Id*. "A party cannot defeat a motion for summary judgment by offering 'purely conclusory allegations of alleged discrimination, absent concrete particulars . . . , for to do so would necessitate a trial in all Title VII cases.'" *Nova v. Dalton*, C 96-3428 FMS, 1998 WL 355537, at *3 (N.D. Cal. June 30, 1998) (citing *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992)).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. It also prohibits an employer from retaliating against an individual because he or she has made a charge of discrimination or opposed a discriminatory practice. 42 U.S.C. § 2000e-3. Title VII claims involving alleged discrimination and retaliation are both governed by a burden-shifting framework.

Initially, the burden rests with the plaintiff to establish a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination, the plaintiff must show that: (1) she belongs to some protected class;

6

1 (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the
2 employer treated similarly situated employees outside her classification more favorably. *Chuang v.*
3 *Univ. of Cal., Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). To establish a prima
4 facie case of retaliation, a plaintiff must show "(1) a protected activity; (2) an adverse employment
5 action; and (3) a causal link between the protected activity and the adverse employment action."
6 *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

7 If the plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to
8 articulate some legitimate, nondiscriminatory reason' for the adverse action." *Texas Dep't of Cmty.*
9 *Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). Once
10 the defendant has done so, the burden shifts back to the plaintiff, who must demonstrate that the
11 employer's reason for the adverse employment decision is a pretext for a discriminatory or
12 retaliatory motive. *Burdine*, 450 U.S. at 253; *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.
13 1994) (quoting *Lowe v. Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985)). In this final analysis, the
14 plaintiff "must do more than establish a prima facie case and deny the credibility of the
15 [defendant's] witnesses." *Schuler*, 793 F.2d at 1011. Rather, he or she must offer "specific and
16 significantly probative evidence" that the proffered reasons are pretextual. *Id*. A plaintiff can show
17 pretext "either (1) directly by persuading the court that a discriminatory reason more likely
18 motivated the employer or (2) indirectly by showing that the employer's proffered explanation is
19 unworthy of credence." *Burdine*, 450 U.S. at 256.

20
21 IV. DISCUSSION
22 A. Microsoft's Investigation Findings
23 Oliver strenuously and repeatedly argues that because Microsoft has *admitted* a violation of
24 its antidiscrimination policies, it has thereby effectively also conceded that a violation of the law
25 occurred. This argument is based on an error of logic. Microsoft contends, and Oliver does not
26 dispute, that its company policies set a *higher* standard than does the law. Oliver then asserts this
27 means that the law is "subsumed" in Microsoft's policies, and "it follows" that any violation of the
28 policies is a violation of the legal standards under FEHA. Oliver has it backwards. Because

7

Microsoft's standards go above and beyond its minimal legal obligations, any violation of the law would automatically contravene Microsoft standards, but a violation of those higher standards would not necessarily be a violation of its less stringent obligations under FEHA.

That said, Microsoft dismisses the findings of its investigation somewhat too cavalierly. In particular, the existence of those findings precludes summary judgment from entering on grounds that there is *no* evidence of a gender or medical condition-based *motive*, and the findings demonstrate that Oliver experienced at least some negative consequences resulting from discriminatory acts. The findings also show there is some evidence of incidents of harassment, though *not* necessarily that any harassment was sufficiently pervasive and severe to be actionable under the law. Accordingly, summary judgment is appropriate only because the evidence is insufficient to create a triable issue of fact notwithstanding the findings of the investigation.

### B. Discrimination, Demotion, and Wrongful Termination

To establish a *prima facie* case of discrimination on the basis of either gender or medical condition, Oliver must provide evidence that she: (1) was a member of a protected class, (2) was qualified for the position she sought or performing competently in the position she held, (3) suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) other circumstance suggests discriminatory motive. *Guz v. Bechtel National, Inc*., 24 Cal. 4th 317, 354-55 (2000).

Here, the undisputed facts show that Oliver's salary was never reduced. She has not shown how the division of SEL responsibilities between her and Cho could otherwise be deemed an "adverse employment action" under the requisite legal standards (regardless of whether it violated Microsoft standards). See *McRae v. Department of Corrections & Rehabilitation*, 142 Cal. App.4th 377, 393 (2006) ("A transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm.") While Oliver has conclusorily characterized the Chief of Staff title she received as a "demotion," she has not pointed to any objective criteria that would support a finding to that effect.

Moreover, the undisputed record demonstrates she was offered the opportunity to resume the SEL role but refused it. Her *argument* that she was not offered the role in a timely manner is not supported by the evidence. Indeed, she continuously made it clear that she did not wish to resume that role, but wanted some other kind of position within the company. Oliver has not shown, however, how Microsoft violated any legal duty to her by failing to accommodate her desire for a job *change.*[2]

Furthermore, much of Oliver's argument focuses on supposed advantages obtained by Cho, and particularly his hiring into the "Business Manager" position. It is undisputed, however, that Oliver did not apply for that position. While she faults her then-supervisor for not promoting her as a candidate for the position, she has not shown how Microsoft had any legal duty to do so.

Finally, it is undisputed that Microsoft restored Oliver's performance evaluation rating, and paid her all the compensation she was due as a result of the higher rating. On this record, no reasonable trier of fact could conclude that Oliver suffered an adverse employment action, as the result of her gender or medical condition.

C. Harassment

Oliver contends that her own "testimony" is sufficient to create a triable issue of fact as to whether she suffered actionable harassment. She has only pointed to a handful of comments by Halliwell, however, in support of her claim. None of those comments relate to her medical condition, and others do not relate to gender on their face. For example, Oliver declares that Halliwell accused her of "hardly working at all" and never being in the office. While Halliwell allegedly also compared Oliver to his wife on occasion, the import or frequency of such comments is vague, at best.

---

[2] Additionally, to the extent Oliver's claim is based on an alleged failure to hire her in an alternate positions, she has not met her burden to show a triable issue of fact with respect to whether she did not obtain those jobs as a result of discrimination or retaliation, despite her qualifications. *See Hastings v. Department of Corrections*, 110 Cal.App.4th 963, 971 (2003).

9

To prevail on a harassment claim, a plaintiff must demonstrate that there existed a "concerted pattern of harassment of a repeated, routine, or generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130-131 (1999). The harassment must have been "sufficiently severe or pervasive" to change employment conditions. *Dawson v. Entek Int'l*, 630 F.3d 928, 937–38 (9th Cir. 2011). Oliver has not shown there is evidence from which a reasonable trier of fact could conclude any harassment rose to such a level.

D. Retaliation

To establish a prima facie case of retaliation under FEHA, Oliver must prove that (1) she engaged in protected activity; (2) Microsoft subjected her to an adverse employment action; and (3) a causal link exists between her protected activity and Microsoft's action. *See Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002). Oliver speculates that her failure to obtain other employment within Microsoft was the result of retaliation for her having brought the internal complaint and, later, this action. She has presented no evidence, however, that any of the persons making decisions on filling those other positions were even aware of her protected activity. Nor, as noted above, has she otherwise shown that she was qualified for those jobs but failed to obtain them as the result of any improper considerations.

Likewise, to the extent Oliver contends her ultimate termination was retaliatory, Microsoft has adequately shown it had a legitimate, nonretaliatory reason for its actions, and Oliver has not presented evidence from which it could be inferred that Microsoft's proffered reasons were pretextual. Oliver had been warned that her employment would end if she did not resume her duties under the SEL position or find another job at Microsoft. The company eventually terminated her employment because she declined to fulfill the SEL role and did not find an alternate position. *See Guz*, 24 Cal. 4th at 356, 358 ("legitimate" reasons "need not necessarily have been wise or correct," but instead merely need to be "facially unrelated to prohibited bias").

### F. Failure to prevent or remedy discrimination or harassment

Oliver's claim against Microsoft for its alleged failure to prevent or remedy discrimination or harassment fails in the absence of a viable underlying claim. *See Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998) (absent showing of actionable discrimination, there can be no violation of Government Code section 12940(i)). Additionally, the record shows that Microsoft maintains and enforces policies designed to prevent and remedy discrimination and harassment in its workplace, and Oliver has shown no triable issue of fact that the implementation and enforcement of those policies were legally insufficient here. Accordingly, this claim also fails.

### G. Failure to accommodate medical condition

Oliver claims that Microsoft failed to accommodate her "medical condition," and points to a letter from a doctor asserting that she was "under a lot of stress." A failure to accommodate claim requires Oliver to show, (1) she has a disability covered by FEHA; (2) she is a qualified individual; and (3) Microsoft failed to make reasonable accommodations for her disability. *Furtado v. State Personnel Bd.*, 212 Cal. App. 4th 729, 744-745 (2013). Oliver's vague assertions are insufficient to give rise to an actionable claim, particularly in light of undisputed evidence that for an extended period of time, Microsoft attempted to accommodate Oliver's desire not to resume her duties and instead to look for other jobs. *See Brundage v. Hahn*, 57 Cal. App. 4th 228, 237 (1997) ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.") [3]

---

[3] Microsoft also seeks summary judgment that it cannot be liable for punitive damages in any event. In light of this disposition, that issue need not be reached, although the argument would appear to have merit.

## V. CONCLUSION

Microsoft's motion for summary judgment is granted.[4] A separate judgment will issue.

IT IS SO ORDERED.

Dated: 8/5/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[4] Good cause appearing, the parties' respective sealing motions (Dkt. Nos. 70 and 75) are also granted.